*117
ORDER

GARY P. SULLIVAN, Acting Chief-Justice.
COMES NOW, the Fort Peck Court of Appeals and upon appellant’s “Motion Requesting Reconsideration and Dismissal of Order dated September 24, 1997”, orders the following;
1. The Motion Requesting Reconsideration and Dismissal of Order is denied.
The Court’s Order is based upon the following:
On February 4, 1994, approximately fourteen and one-half (14½) years after appellant accepted a $13,000 lump sum settlement from appellee “in full compromise, settlement and satisfaction of all claims and causes of action that now exist, or may hereafter accrue, in her favor, against (appellee) by reason of ... the care, support and maintenance, and education of the child, and forever releases (appellee), his heirs, executors, administrators, and assigns from all such claims and causes of action”, she petitioned the Fort Peck Tribal Court to declare the stipulation to be “unconscionable in that it did not provide the child with an amount adequate to provide appropriate support ... ”, During the ensuing year the record accumulates various Notices, Motions, and Orders, all of which culminated in appellant’s filing of two (2) separate Petitions for Review to this Court (from Tribal Court Orders in August, 1994 and January, 1995). From January, 1995 to July, 1995, appellant did absolutely nothing to prosecute her appeal. On July 24, 1995, appellee filed a Motion to Dismiss the Petitions for Review. For yet another six (6) months, appellant continued *118 to remain silent, utterly failing to oppose the Motion to Dismiss or, to prosecute the appeal in any other manner or form. Finally, on January 2, 1996, this Court dismissed appellant’s Petitions for Review for failure to file a timely brief.
On March 15, 1996, approximately two and one-half (2⅛) months after our Order of Dismissal, appellant filed a Motion for Reconsideration to this Court, pleading, in effect, the mistake, inadvertence or neglect of her former attorney in not filing a timely brief. Appellee filed his Objection and Response to the Motion for Reconsideration and on March 25, 1996, this Court granted appellant’s belated Motion for Reconsideration.
On March 29, 1996, appellee filed a Motion to Disqualify two of the three sitting Justices of this Court. Appellant filed an objection to this Motion on April 9, 1996. On April 19, 1996, the Motion was denied. Despite the denial of the Motion to Disqualify, our Chief Justice Beaudry and Associate Justice Schuster voluntarily re-cused themselves to allay any notions or appearances of impropriety or prejudice. The Fort Peck Tribal Council then authorized the sole remaining Justice to seek two Justices Pro Tern.
On July 20, 1996, Oral Arguments were heard and our Opinion was filed on or about November 25, 1996. On April 14, 1997, approximately four and one-half (4⅛) months after our Opinion was filed, appel-lee filed his Motion for Reconsideration of this Court’s November, 1996 Opinion based upon the fact that the repeal date of an Oregon statute, upon which this Court relied in it’s November, 1996 Opinion, was not the effective date of the repeal, therefore, based upon this “newly” discovered information, this Court should reconsider it’s earlier decision.
In March, 1996, this Court adopted its “Rules of Procedure in the Court, of Appeals”. Our review and consideration of appellee’s Motion for Reconsideration fell under our newly adopted Rule 9. However, in our opinion, it would have been grossly unfair for us to apply our newly adopted Rule 9, which limits the time for Reconsideration to twenty (20) days, when, in this very same case, we had already shown great forbearance to appellant in allowing her Motion for Reconsideration which was made 2'k months after our Order of Dismissal. Further, we are puzzled by appellant’s contention, in full view of her own belated Motion for Reconsideration, now arguing that her “... civil rights under the Indian Civil Rights Act” will be violated by appellee’s belated Motion for Reconsideration and that there are no provisions for such a motion “... in the Tribal Constitution, CCOJ, Federal or Montana Rules of Civil Procedure.” Apparently the “sauce for the goose” is too bitter to be “sauce for the gander”. We reject appellant’s selective application of the law in favor of the principle that we recently enunciated:
First, we note that justice in our legal system is not some vague sense of right or wrong, nor is it a feeling that one gets as they listen to opposing sides advocate their positions. To administer justice is “to do justice”, and “to do justice” in our legal system means to treat everyone adequately, fairly, and with full appreciation before the law. No one stands above the law, no one stands below the law. All are treated equally before the law. Payne v. Payne, FPCOA # 253 at p. 13
We also reject appellant’s characterization of appellee’s Motion for Reconsideration as an “appeal of an Appellate Opinion”. Surely we need not instruct trained lawyers on the difference between a Motion to Reconsider and an “appeal”.
*119 On October 16, 1997, this Court received a copy of a letter from Stephen N. Cournoyer, Jr., Chairman of the Yank-ton Sioux Tribe, of which appellant is a member. The letter was addressed to Caleb Shields, Chairman of the Fort Peck Tribes and attached thereto were copies of five (5) other letters from various writers. Although Chairman Cournoyer’s letter recites wide distribution, including a South Dakota U.S. Senator and the Secretary of the Interior—Bureau of Indian Affairs, we found no indication that his parcel of letters had been sent to the litigants herein. Further, inasmuch as the tone and tenor of these letters appear to advocate for the appellant, we must view them as “unauthorized ex-parte communications” and we order that the complete parcel of letters received by this Court be attached to this Order and distributed to the litigants. We also feel compelled to address any perceived impact of these letters on this Court’s evaluation and ultimate decision in this matter.
First, the parties and all those interested in the outcome of this case, need to be aware of two (2) provisions contained in the Fort Peck Comprehensive Code of Justice, Title I, Section 505. Members of the Tribal Executive Board shall not practice as attorneys or lay counselors or attempt to influence Tribal Court decisions.
“No member of the Tribal Executive Board shall practice before or in any manner attempt to influence any decision of the Tribal Court or Court of Appeals during his/her term of office. Attempts to influence Tribal Court decisions shall be grounds for removal from office under Section 2(b), Article VI of the Tribes’ constitutions and bylaws.”
While Chairman Cournoyer’s letter starts with, “I am writing to you seeking your support as a friend of tribe in regard to a court matter pending in the Ft. Peck tribal court ... ”, we are convinced that, whatever his intent, he was unaware of our code and that he would certainly not want to find himself encouraging others, much less our Chairman, to violate it. We applaud Chairman Cournoyer for including us on his distribution list, albeit, we regret that he did not include the parties and/or their attorneys in the distribution. Further, we assume that Chairman Cournoyer was acting in what he perceived as a helpful manner. He states that “it seems to (him) that the (Ft Peck Court of Appeals) system is derelict in its duties”, an opinion to which he is rightfully entitled. We certainly do not fault Chairman Cournoyer for his opinion. Nor do we think that the Chairman’s conveyance of his opinion of the Fort Peck Court of Appeals alleged “derelict(ion) in their duties” in a letter to our Chairman is, in any way, troublesome. However, we do take issue with the factual pattern that he sets forth and it is obvious to us that he is either uninformed as to the true facts or that he has chosen not to address them. We must also respectfully dissent from many of his conclusions and the legal opinions expressed in his letter.
The more serious matter for us to contend with is contained in the penultimate paragraph of Chairman Cournoyer’s letter, wherein he states in part: “I will be instructing our tribal attorneys, the firm of James Abourezk, to prepare a brief for a civil rights violation, should this appeal be granted and the father Wyman Babby granted the right not to pay child support”. It is clear that the Chairman is either threatening or, as some might say, “promising” to sue someone if the appeal (Motion for Reconsideration) is granted. Whether the intent is to sue our Chairman, our Tribal Executive Board, the Court of Appeals or some one else is unclear. What should be made very clear is the fact that no pending litigation initiated by Chairman Cournoyer, or anyone else, will influence, in any way, this Court’s decision in this case.
*120 With regard to our own Chairman, to whom the letter was addressed, and the Tribal Executive Board, which appears on the distribution list, we are confident that each of them are well aware of Section 505 and that each of them will judiciously abide by it. Thus, we do not anticipate the slightest movement on their part to attempt to influence in any way, the actions of this Court in this matter, or in any other matter. The Fort. Peck Tribal Executive Board has been the author, motivator, and the most staunch supporter of, an independent judiciary. There is absolutely no reason to doubt that this episode, unfortunate as it is, will do anything but to strengthen their resolve to have an independent judiciary at Fort Peek.

Title III, Section 412-B. Threats and other improper influences in official matters.

“An individual commits an offense under this section if that individual purposely:
a. Coerces, threatens harm to, injures, or intimidates any person, including any public servant, with the purpose to influence that persons’ decision, opinion, recommendation, vote, or exereise of discretion as a public servant, or voter, or in a judicial or administrative proceeding.
An offense under this section shall be a Class A misdemeanor.”
Each of the parties and their respective supporters would do well to read the above section very carefully. It could be argued that undue “political pressure” qualifies under sub-paragraph (a) above.
Now, lest this Order, up to this point fails to make our position clear, let us pronounce it here and now. This Court does not take it’s marching orders from any individual, such as Chairman Cournover, nor Chairman Shields, nor any of the Fort Peck Tribal Executive Board members, even though we hold each of them, many of whom we know, and their respective positions, in the highest esteem. Each and every one of them commands our greatest respect. Nor do we cadence with groups of individuals, governmental agencies, popular majorities or the like. To the best of our ability, this Court will never allow an individual, group, governmental agency or popular majority to influence one of it’s decisions. We have been, and we shall remain to be, blindly committed to, and in lockstep with, the law. Allowing only the facts and the law in a given matter to steer the helm and it shall be the interaction of those two, and those two alone, that will guide our ship to the appropriate destination. To that end, our litigants herein, and all litigants coming before our Tribal Courts, may rest assured.
Let us also be clear on one more thing: if anything that we have said sounds proudful, arrogant, or boastful, we certainly did not mean it so. Jurists are humble servants, but must always be stalwart in their resistance to all extraneous influences; pliant only to the law. They must stand firm and unyielding to social, financial and political pressures, yet remain compassionate and caring toward those whom they serve. They must be meek and gentle in their demeanor, yet bold in their pronouncements and rulings. As jurists we are neither Lords nor Masters, but rather, humble, yet most definitely, independent servants of the law and it is to these ends that we strive.
Our Order and briefing schedule of September 24, 1997 remains in full force and effect. For the reasons stated, appellant’s Motion is denied.
IT IS SO ORDERED.